October 26, 1908.

————o————

### No. 4515.

(Court of Appeal, Parish of Orleans.)

JEFFERSON D. HARDIN VS. B. H. FLASHPOLLER'S SONS, ET AL.

On examination of an exception of no cause of action the allegations

of the whole petition must be construed together and too much weight must not be given to isolated expressions therein.

Appeal from Civil District Court, Division "C."

T. M. and J. D. Miller, for Plaintiff and Appellant.

Frank McGloin for Defendant and Appellee.

ESTOPINAL, J.   The plaintiff claims of the defendant the sum of one hundred and forty-seven dollars and forty-eight cents ($147.48), with legal interest from July 15, 1907, averring in his petition that in the months of May, June and July, 1907, and prior to that time, he had been engaged in business in the City of New Orleans as Receiving and Delivery Agent for jobbers who would consign goods and merchandise to him, and that he in turn, upon the presentation to him of orders by the buyers, would make delivery of such goods to such buyers; that among those whom he represented in the capacity as Receiving and Delivery Agent, as aforesaid, was the N. K. Fairbank Company, a corporation of the State of Illinois, wholesalers, doing business in the town of Gretna, in this State, where it owned and operated a lard factory; that in the month of May, 1907, the said N. K. Fairbank Company sold to the defendant forty-nine (49) tierces and seventy-one (71) cases of lard compound; that in due time the N. K. Fairbank Company, in the regular course of business, shipped via the Texas & Pacific Railway Company, the entire consignment to the defendant through plaintiff, the same being marked "B. H. F. Sons."

The plaintiff further avers that the total value of the said forty-nine (49) tierces of lard and seventy-one (71) cases of lard compound, and the price to be paid therefor by defendant to the said N. K. Fairbank Company on delivery thereof, less the usual trade discount, was the sum of Two Thousand One Hundred and Thirty Dollars and Sixty-Three Cents ($2,130.63). The plaintiff avers that he made delivery to the defendant of all the tierces and cases of lard, and that delivery was duly accepted by the defendant, and that subsequently, pretending that he (plaintiff), had failed to deliver five (5) tierces of said consignment, defendant paid the Fairbanks Company the value of the consignment, less the five (5) tierces which they claimed had not been delivered, the value of which amounted to One

—4—

Hundred and Forty-seven Dollars and Forty-eight Cents ($147.48).

Plaintiff then avers that the "N. K. Fairbank Company, declaring to petitioner that it did not wish to sue said firm (defendant), one of the customers, insisted that petitioner (plaintiff) should make good to it the said sum of One Hundred and Forty-seven Dollars and Forty-eight Cents ($147.48); that therefore, plaintiff agreed to pay to the Fairbank Company said sum, provided it (Fairbanks Company), would subrogate petitioner to all its rights in respect to all claims it would or might have against said B. H. Flashpoller's Sons, in case they or their authorized agent did receive said five tierces of lard alleged to be short; that the Fairbanks Company agreed to this arrangement, and an agreement was entered into whereby the Fairbanks Company subrogated to the plaintiff, any and all rights of action it, (Fairbanks Company), had against the defendants herein, B. H. Flashpoller's Sons, on account of the sale and delivery of said five tierces of lard compound.

On this recital of the premises plaintiff claims that he is entitled to demand and recover from the defendant said sum of One Hundred and Forty-seven Dollars and Forty-eight Cents ($147.48).

The defendant interposed an exception of no cause of action, which was sustained by the lower Court, and from this ruling plaintiff prosecuted this appeal.

Defendant relies upon the allegations of plaintiff's petition in support of its exception of no cause of action, urging that the words, "in settlement with the party of the first part," found in the contract of subrogation between plaintiff and Fairbanks Company, is tantamount or equal to an acquittance in full of the claim, and that this being the case, and there existing no contractual relations between Flashpoller's Sons and plaintiff, that the latter is without right to sue.

We cannot take that view. The showing made in this case on the face of the papers, does not permit of such a conclusion.

All of the circumstances and conditions of this transaction must be considered together and these show a conditional settlement, and not one shutting out all further recourse.

It was perfectly competent and proper for the Fairbanks Company to say to defendant, "Go on and settle for what you

—5—

claim you received," but would this proposition defeat the right of Fairbanks Company, when they discovered that defendant had in fact received the entire consignment, to institute proceedings to recover what was justly due? We opine not. We do not think it is necessary to discuss here the reasons which impelled the Fairbanks Company to avoid a lawsuit with defendant. Suffice it to say that having determined not to sue after the shortage was made good by its intermediary, its distributing agent, the plaintiff, it had a perfect right to subrogate or assign its claim to this agent who avers that all of the goods were delivered to defendant, in order that the agent may, if he be right, recover what is justly due him.

As we have already said, it cannot be seriously said that Fairbanks Company had a right of action against defendant; with this right of action they have parted, transferring it to a person who was a party at interest in this, that he was the intermediary through whom delivery of the goods were made. Therefore, what difference can it make to the defendant who the parties are with whom it must try the issues? All parties to this transaction are apparently in good faith, and the ends of justice require that the merits of this controversy be inquired into with a view to securing ultimately a correct adjudication of these.

The ruling of the lower Court was error, and the case must be remanded.

The judgment maintaining the exception of no cause of action is reversed and the cause is remanded for trial on the merits, costs of appeal to be paid by the defendant and appellee and those of the lower Court to await the final determination of the case.

October 26, 1908.

Rehearing refused, November 9, 1908.